JOHN LOFTUS, Appellee, v. J. E. RILEY & Co., Appellants.

1. **Sales**: FUTURE DELIVERY: AGREEMENT AS TO QUALITY: PERFORMANCE: EVIDENCE. A contract for the sale and future delivery of granite blocks for paving the streets of a city contained certain specifications designating the quality and dimensions of the blocks to be used by the paving contractor, and providing that in no case would the contractor be allowed to use blocks other than those described in the specifications, or which should be approved by the city engineer. Some of the blocks shipped by the plaintiff to the defendants under said contract having been objected to by the city officials, the defendants refused to receive any of the blocks shipped. *Held*, in an action by the vendor against the vendee for the breach of said contract, that the plaintiff was properly permitted to show that the blocks furnished by him were as good as those laid by the defendants, and accepted by the city.

2.   ———: ———: ———: ———: USAGE: INSTRUCTIONS TO JURY. It appearing that the usage in such cases is, that the vendees were required to accept the blocks which were equal to the requirements of the contract, if the plaintiff stood ready to make good the defective ones and that the plaintiff was able and ready so to do, *held*, that the court properly refused to instruct the jury that the plaintiff was not entitled to recover if a considerable number of the blocks tendered by the plaintiff did not meet the requirements of the contract.

3.   ———: ———: REFUSAL OF VENDEE TO ACCEPT: REMEDY OF VENDOR: TENDER. The defendants having, by their contract, placed it out of their power to accept the blocks contracted for, *held*, that the plaintiff was justified in relying upon their action as a waiver of a tender of the balance of the contract number of blocks not shipped, and was entitled to recover damages for that portion of which no tender of the actual material was made.

4.   ———: ———: SUBSTANTIAL PERFORMANCE ONLY REQUIRED. The court instructed the jury that the defendants were liable for the carloads of blocks not inspected by them, unless they did not conform substantially to the specifications. *Held*, that the use of the word *substantially* in such connection was not erroneous.

5.   ———: ———: BREACH OF BY VENDEE: DAMAGES. The contract between the plaintiff and defendants was made in the month of April, and was for blocks for seventeen hundred and fifty yards of paving, but contained no provision fixing time for delivery. The contract for paving between the defendants and the city, however, provided for thirty-five hundred yards of granite paving, besides a quantity of brick paving, and that work thereon should commence on or before April 15, and be completed on or before August 15. No demand was made for the blocks to be furnished by the plaintiff until the eighth of May, when the defendants telegraphed the plaintiff that they must ship the balance of blocks, being for twelve hundred and fifty yards of paving, within three days. Afterwards the defendants examined two of the ten carloads of blocks shipped by the plaintiff, and, finding some of them defective in quality and size, refused to receive them, without giving the plaintiff notice of their defective character, or giving him an opportunity to furnish blocks that would conform to the contract. *Held*, that the evidence warranted a recovery by the plaintiff in damages for the breach of the contract.

*Appeal from Des Moines District Court.*—HON. CHAS. H. PHELPS, Judge.

SATURDAY, OCTOBER 17, 1891.

ACTION to recover damages for the breach of an engagement to purchase paving blocks. There was a

trial by jury, and a verdict and judgment in favor of the plaintiff. The defendants appeal.—*Affirmed.*

*Tracy & Mercer* and *S. K. Tracy,* for appellants.

*P. Henry Smythe & Son,* for appellee.

Robinson, J.—In April, 1889, the parties to this action were bidders for a contract to be let by the city of Burlington for certain paving to be done with granite blocks or brick. Before the contract was awarded it was agreed between the parties named that, if either obtained the contract, the other should furnish to the successful bidder one-half of the paving blocks required, at the price of two dollars per yard, delivered in Burlington. The defendants were awarded the contract, which, as finally let, included both granite-block and brick paving, and provided that the work thereunder was to be commenced on or before the fifteenth day of April, 1889, and completed on or before the fifteenth day of the next August. The specifications, which were made a part of the contract, designated the quality and dimensions of the blocks to be used, and provided that in no case would the contractor be allowed to use blocks other than those described in the specifications, or which should be approved by the city engineer. The quantity of granite paving required was about thirty-five hundred yards. The plaintiff owned a granite quarry near Sioux Falls, from which he procured the blocks which he shipped to the defendants, and from which he proposed to obtain all required by his agreement. The defendants owned a quarry of similar stone a few miles ·distant from that of the plaintiff, from which they shipped the blocks which were actually used. The plaintiff seeks to recover the contract price for those shipped, and the difference between the contract price ·and the actual cost of delivering the twelve hundred and fifty yards which were not shipped. The defend-

ants deny liability on the alleged ground that the blocks shipped were not of the dimensions and quality required by their contract with the city, and were rejected by the city, and deny that the plaintiff was able to perform the agreement on his part.

There is much conflict in the evidence, but we think the jury were authorized to find the facts to be substantially as follows: As soon as the contract with the city was entered into, the plaintiff went to his quarry, opened it, and commenced getting out granite blocks. On the thirtieth day of April he wrote to the defendants at Burlington that he would ship five carloads of blocks soon, and he in fact shipped them on the seventh day of May. On the sixth day of May the plaintiff wrote to the defendants at Burlington as follows: "There is five carloads of blocks on the road. If you are in a hurry, I can put on as much force as you need soon as I get answer to this. I will send message to my foreman." On May 8, the defendants sent to the plaintiff a telegram as follows: "Letter received; must have all your blocks shipped this week; * * * ship none after Saturday." The telegram was sent on Wednesday. On the next day the plaintiff sent a telegram to the defendants as follows: "Telegram received. Will furnish blocks as per contract, within a reasonable time, but Saturday not reasonable. I expect you to keep the contract." On the tenth the defendants telegraphed to the plaintiff that they had investigated the quarry of the latter, and found capacity too limited to furnish the blocks in the near future, and could not wait for them, unless the plaintiff would pay the damages caused by the delay, and get the city to wait for the paving. On the thirteenth day of May the defendants again wrote to the plaintiff in effect complaining of delay. The proposition of the plaintiff to put on additional men, if needed, does not seem to have been otherwise answered. On the fifteenth

of May he made an additional shipment of five car-
loads of blocks.   The defendants commenced paving
the east side of the street with their own blocks, leaving
the west side to be paved with blocks to be shipped
by the plaintiff.   Before they finished the east side the
first shipment of blocks made by the plaintiff had been
received in Burlington, but when the east side was
finished they at once commenced paving the west side
with their own blocks.   When the west side was nearly
half completed, and when all the blocks shipped by the
plaintiff were in cars standing on the track in Burling-
ton, the defendants for the first time had some of them
hauled onto the street.   Objections to them were made
by some of the officials of the city, and they were taken
away, and none of the blocks shipped by the plaintiff
were used.   Some of the blocks in question were defect-
ive in quality and size, and, although some of the
witnesses for the defendants testified that less than
half were suitable for use, the jury might well have
found that three-fourths of them and more were equal
in all respects to those laid and approved by the city.
It is not expected that all of the blocks contained in
such shipments as those made by the plaintiff will be
equal to the standard required, but it is customary in
such cases for the person to whom they are furnished
to reject the defective ones.   The plaintiff was able and
ready to supply good blocks in lieu of those which
were defective, but he was notified, after the second
shipment, that the defendants refused to receive the
blocks, and made no further shipments.

I.   The appellants complain of the ruling of the
district court which permitted the plaintiff to show that
the blocks he furnished were as good as
those laid by the defendants and accepted
by the city.   We think there was no error
in such ruling.   The contract lodged a
discretion in the city engineer to accept blocks which

1. SALES: future
   delivery:
   agreement as
   to quality;
   performance:
   evidence.

were not of the kind described in the specifications, and blocks which he approved were as much within the requirements of the contract as were those which it specifically described. Therefore, evidence which showed that the blocks furnished by the plaintiff were similar and equal to those which were used by the defendants, and approved by the engineer, tended to show that the blocks so furnished were of the kind and quality required by the contract.

II.  The defendants asked the court to give several instructions to the jury, which were refused. As to several of them, we need only say that, so far as they were correct and applicable to the case, they were given in substance in the charge of the court. The eighth instruction so refused was based on the theory that, if a considerable number of the blocks tendered by the plaintiff did not meet the requirements of the contract, he could not recover. The evidence did not justify this instruction, for it appeared that by the usage in such cases the defendants were required to accept the blocks which were equal to the requirements of the contract, if the plaintiff stood ready to make good the defective ones. The charge of the court on that point was, we think, fair to both parties.

III.  The ninth instruction asked by the defendants, and refused, is as follows: "If you find from the evidence that the portion of granite to be furnished by the plaintiff would amount to seventeen hundred and fifty square yards, or thirty-five carloads or thereabouts, and, if you further find that plaintiff tendered but five hundred yards, or ten carloads or thereabouts, then you are instructed plaintiff cannot recover damages of any character for that portion of which he did not tender the actual material, and your verdict upon that portion of the case should be for the defendants." The evi-

dence tended to show that the plaintiff desired and offered to furnish all the blocks required by his contract, but that the defendants placed it out of their power to accept them by not examining those sent until after they had laid a large portion of the paving which was to be done with the blocks of the plaintiff, and that their conduct was, in effect, an absolute refusal to accept any of his blocks; and that the plaintiff was justified in relying upon their action as equivalent to a waiver of tender. That being the condition of the case, the instruction was properly refused.

IV. The evidence tended to show that defendants inspected but two of the ten carloads of blocks sent by 4. ——: ——: substantial performance only required. the plaintiff before they rejected all of them, and that the blocks in those two cars were inferior to those in the others. The court charged the jury that, if the defendants failed to inspect a portion of the blocks, they would be liable to pay for them, unless they did not conform substantially to the specifications. The appellant complains of the use of the word "substantially." We think it was rightly used. It did not justify any material departure from the contract as to the dimensions and quality of blocks to be furnished, but required them to be in all essential particulars like those required by the contract.

V. A careful examination of the entire record satisfies us that the verdict and judgment were fully 5. ——: ——: breach of by vendee: damages. authorized by the evidence, and that substantial justice is done by them. The course taken by the defendants shows quite clearly that they did not desire the plaintiff to furnish the blocks, but sought to prevent him from doing so. No time was fixed for their delivery, and no demand for them was made until the defendants were almost ready to use them, and then but three days' time was given in which to ship them. If the defend-

ants had desired, in good faith, to carry out the agreement on their part, they would have given the plaintiff reasonable notice of the time when the blocks would be needed, and would have made an inspection of the blocks actually on hand before laying their own; and, if they found some of the blocks defective, they should have notified plaintiff of the fact, unless it was apparent that he must have known of the defects. They were not authorized to reject all the blocks because a small portion of them were defective. The plaintiff was willing, able and ready to furnish all the blocks required by his contract within a reasonable time after demand. The contract with the city gave the defendants four months in which to do the work it contemplated, and there is nothing in the record to show that the paving with blocks was to be done before the paving with bricks, nor that the plaintiff knew that he would be expected to furnish the blocks by the eleventh day of May, until the telegram of May 8 was received. There was evidence to justify the amount of the verdict rendered, and we cannot disturb it as excessive.

What we have said disposes of all material questions discussed by counsel. The judgment of the district court is AFFIRMED.